UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMMY LYNN
JAVINSKY-OLTHOFF,

              Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.

_____/

Case No. 2:21-cv-11012
District Judge Linda V. Parker
Magistrate Judge Anthony P. Patti

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 14), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 16) and AFFIRM THE COMMISSIONER'S DECISION

## I.   RECOMMENDATION:

For the reasons that follow, it is **RECOMMENDED** that the Court **DENY**

Plaintiff's motion for summary judgment (ECF No. 14), **GRANT** Defendant's

motion for summary judgment (ECF No. 16), and **AFFIRM** the Commissioner's

decision.

## II.   REPORT

Plaintiff Tammy Lynn Javinsky-Olthoff brings this action under 42 U.S.C. §

405(g) and 42 U.S.C. § 1383(c)(3) for review of a final decision of the

Commissioner of Social Security (Commissioner) denying her applications for

Disability Insurance (DI) benefits and Supplemental Security Income (SSI).  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment, (ECF No. 14), the Commissioner's cross-motion for summary judgment, (ECF No. 16), and the administrative record (ECF No. 11).[1]

### A.      Background and Administrative History

In her September 19, 2017 applications for disability insurance benefits (DIB) and SSI, Plaintiff alleges her disability began on July 2, 2017 at the age of 49.  (ECF No. 11, PageID.290-296.)  She later amended her alleged disability onset date to July 27, 2017, still at the age of 49.  (ECF No. 11, PageID.321.)  In her disability report, she lists "back problem," anxiety disorder, depression, fibromyalgia, sacroiliitis, and arthritis. (ECF No. 11, PageID.326.)  An administrative hearing was held on July 25, 2019, before Administrative Law Judge ("ALJ") Brian Burgtorf.  (ECF No. 11, PageID.99-116.)  Her application was denied on August 20, 2019.  (ECF No. 11, PageID.73-89.)

---

[1] Plaintiff makes record citations to transcript pages as opposed to the Court's own docketed numbering system, i.e., (ECF No. __, PageID.__).  *See* E.D. Mich. Elec. Filing Policies and Procedures R6.  Per this Court's requirements, mere citations to transcript pages are no longer permissible and put briefs at risk of being stricken and "filing users" at risk of sanctions "for repeated filing errors."  *See* E.D. Mich. Elec. Filing Policies and Procedures R4(b).

Plaintiff submitted a request for review of the hearing decision and order on August 30, 2019. (ECF No. 11, PageID.271-273.) However, on March 1, 2021, the Appeals Council denied Plaintiff's request for review. (ECF No. 11, PageID.52-58.) Thus, ALJ Burgtorf's decision became the Commissioner's final decision. Plaintiff timely commenced the instant action on May 5, 2021. (ECF No. 1.)

### B.   Plaintiff's Medical History

The administrative record contains approximately 456 pages of medical records, which were available to the ALJ at the time of his August 20, 2019 decision. (ECF No. 11, PageID.407-862.) These materials will be discussed as necessary below.

### C.   Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)., at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 27, 2017, the amended alleged onset date. (ECF No. 11, Page.ID.76.) At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, bilateral hip degenerative joint disease/sacroiliitis/arthrosis, hypertension, migraine headaches, asthma, diabetes mellitus, adjustment disorder with depressed mood and mild bifrontal atrophy. (*Id.*) At **Step 3**, the ALJ found Plaintiff did not have

3

an impairment or combination of impairments that met or medically equaled the

severity of one of the listed impairments in 20 CFR Part 404 Appendix 1 of

Subpart P.  Between **Steps 3 and 4** of the sequential process, the ALJ evaluated

Plaintiff's residual functional capacity (RFC)[2] and found that Plaintiff had the

RFC:

> to perform light work . . . except she can never use foot controls
> bilaterally.  She can never climb ladders, ropes, scaffolds, and stairs,
> but can occasionally climb ramps, balance, stoop, kneel and crouch
> and crawl.  She can have occasional exposure to hazards such as
> unprotected heights and moving mechanical parts.  She can tolerate
> frequent exposure to dusts, fumes, odors, gases, and poor ventilation.
> She must work in a moderate noise environment.  The claimant can
> understand, remember and carry out simple, routine tasks with simple
> work-related decisions and judgments.  She can tolerate occasional
> changes in a routine work environment and can have occasional
> interact[ion] with others, such as coworkers, supervisors and the
> general public.

(ECF No. 11, PageID.80.)  At **Step 4**, the ALJ determined that Plaintiff was able to

perform past relevant work as a housekeeping cleaner.  (ECF No. 11, PageID.87.)

Alternatively, at **Step 5**, considering Plaintiff's age, education, work experience,

and RFC, the ALJ determined that there were jobs that existed in significant

numbers in the national economy that Plaintiff could perform, such as garment

sorter, mail clerk, and folder.  (ECF No. 11, PageID.88-89.)  The ALJ therefore

---

[2] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d
235, 239 (6th Cir. 2002).

concluded that Plaintiff had not been under a disability, as defined in the Social

Security Act, since July 27, 2017.  (ECF No. 11, PageID.89.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see

also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of

evidence but less than a preponderance; it is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

Court does "not try the case de novo, resolve conflicts in evidence, or decide

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,

to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E. Analysis

Plaintiff claims in her motion that the ALJ erred in Step 3 of the five-step process in finding that Plaintiff's conditions do not meet Listing 1.02. (ECF No. 14, PageID.870.) The Commissioner responds that substantial evidence supports the ALJ's finding that Plaintiff's impairments did not meet or medically equal one of the listed impairments, including Listing 1.02. (ECF No. 16, PageID.898.) Plaintiff has filed a reply, which the Court has also considered. (ECF No. 17.)

A claimant's impairment must meet every element of a Listing before the Commissioner may conclude that she is disabled at Step 3 of the sequential evaluation process.  *See* 20 C.F.R. § 404.1520; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986).  The claimant has the burden at Step 3 to prove that "all of the specified medical criteria" are satisfied.  *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984).  Moreover, "[t]he burden of providing a [record] complete and detailed enough to enable the Secretary to make a disability determination rests with the claimant."  *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).

### 1.    Listing 1.02 - major dysfunction of a joint(s).

Plaintiff claims in her motion that the "ALJ erred in finding Plaintiff's conditions do not meet listing 1.02 -major dysfunction of a joint(s).".  (ECF No. 14, PageID.870, 881.)  Listing 1.02A requires:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With . . . Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in *inability to ambulate effectively* . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02 (emphasis added).[3]  The regulations

define "inability to ambulate effectively" as "an *extreme limitation* on the ability to

walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's

ability to independently initiate, sustain, or complete activities."  *Id.* at §

1.00(B)(2)(b)(1) (emphasis added).  Examples of ineffective ambulation are "the

*inability* to walk without the use of a walker, two crutches or two canes," "the

inability to walk a block at a reasonable pace on rough or uneven surfaces," and

"the inability to carry out routine ambulatory activities, such as shopping and

banking."  *Id.* at § 1.00(B)(2)(b)(2) (emphasis added).

  Plaintiff claims that ALJ Burgtorf erred in finding that she was able to

ambulate effectively without the need for an assistive device.  (ECF No. 14,

PageID.882.)  For an assistive device to be found to reduce a claimant's ability to

work, it must be a necessary device for the claimant's use.  *Carreon v. Massanari*,

51 F. App'x 571, 575 (6th Cir. 2002).  In determining whether an assistive device

is necessary, "there must be medical documentation establishing the need for a

hand-held assistive device to aid in walking or standing, and describing the

circumstances for which it is needed (i.e., whether all the time, periodically, or

---

[3] This is the previous version of the Listing applicable to Plaintiff's applications.
*See* https://secure.ssa.gov/poms.nsf/lnx/0434121013.

only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 SSR LEXIS 6 at *19, (July 2, 1996).

### 2. Case law regarding Listing 1.02 and determining the medical necessity of assistive devices.

In light of SSR 96-9p, 1996 SSR LEXIS 6, courts have generally required medical evidence specifically describing the circumstances for which an assistive device is needed. Without that specific documentation, courts will find that the plaintiff has not met their burden of proof at Step 3. *Krieger v. Comm'r of Soc. Sec.*, No. 2:18-cv-876, 2019 WL 1146356, at *4-5 (S.D. Ohio Mar. 13, 2019) (Vascura, M.J.) (finding that the plaintiff failed to prove her assistive device was medically necessary where her doctor indicated she needed to use a cane but did not indicate for what circumstances as required by SSR 96-9p), *report and recommendation adopted*, 2:18-cv-876, 2019 WL 3955407 (S.D. Ohio Aug. 22, 2019) (Morrison, J.); *Swearengin v. Berryhill*, No. 3:17-CV-32-DCP, 2018 WL 5045216, at *3-5 (E.D. Tenn. Oct. 17, 2018) (concluding that substantial evidence supported the ALJ's finding that a cane was not medically necessary where medical records showed that the plaintiff was using a cane, and on one occasion using a walker, but the plaintiff failed to cite to any medical records describing the circumstances for which an assistive device was needed as required by SSR 96-9p, 1996 SSR LEXIS 6); *Scroggins v. Comm'r of Soc. Sec.*, No. 16-11913, 2017 WL 4230650, at *4 (E.D. Mich. Sep. 25, 2017) (finding that the plaintiff's reliance on a

document from a medical equipment company showing that the plaintiff received a cane did not describe the circumstances for which the plaintiff needed an assistive device).

Courts have also found that where medical records show inconsistent usage of an assistive device, the ALJ was justified in finding that the assistive device was not medically necessary. *Parr v. Comm'r of Soc. Sec.*, No. 2:20-CV-13173, 2021 WL 5986920, at *11-12 (E.D. Mich. Aug. 31, 2021) (Morris, M.J.) (holding that where several of the plaintiff's physicians noted that he could ambulate effectively and testimony showed that the plaintiff could perform infrequent and undemanding household chores, there was substantial evidence that the plaintiff could ambulate effectively), *report and recommendation adopted*, No. 20-13173, 2021 WL 5370483 (E.D. Mich. Nov. 18, 2021) (Goldsmith, J.) ; *Ross v. Comm'r of Soc. Sec.*, No. 2:17-cv-169, 2018 WL 580157, at *6 (S.D. Ohio Jan. 29, 2018) (Vascura, M.J.) (concluding that substantial evidence supported the ALJ's determination that Plaintiff did not medically require an assistive device where medical providers observed her ambulating normally without a cane), *report and recommendation adopted*, No. 17-cv-169, 2018 WL 1406826 (S.D. Ohio Mar. 21, 2018) (Marbley, J.).

Subjective evidence, such as a claimant's testimony in front of the ALJ, is not sufficient to show that an assistive device is medically necessary. *Brunton v.*

*Comm'r of Soc. Sec.*, No. 5:20-CV-2233, 2021 WL 8016911, at \*12-13 (N.D. Ohio Dec. 9, 2021) (Parker, M.J.) (holding that the plaintiff's assertion in his brief that his cane limited his ability to use both upper extremities was not sufficient to show that the cane limited his ability to ambulate effectively), *report and recommendation adopted*, No. 5:20-cv-2233, 2022 WL 950446 (N.D. Ohio Mar. 30, 2022) (Ruiz, J.); *Ringer v. Comm'r of Soc. Sec.*, No. 5:19-cv-01924, 2020 WL 4676731, at \*8-10 (N.D. Ohio Aug. 12, 2020) (rejecting the plaintiff's testimony that her walker was medically necessary where the evidence in the record did not show that it was necessary or for what circumstances it was necessary); *Lewis v. Barnhart*, 431 F.Supp.2d 657, 662 (E.D. Tex. 2006) (finding that the plaintiff's testimony that his need for a walker was unsubstantiated by the medical record and he therefore failed to meet his burden of proof at Step 3).

Where the medical record shows that the use of an assistive device is something less than "necessary," or the medical record merely infers the use of an assistive device without stating that it is medically necessary, courts have upheld findings that an assistive device was not medically necessary. *Carreon*, 51 F. App'x at 575 (holding that an assistive device that was not obligatory but instead was used for "insurance" was not medically necessary); *Strain v. Comm'r of Soc. Sec.*, No. 5:12-CV-1368, 2013 WL 3847160, at \*2-3 (N.D. Ohio Aug. 1, 2013) (holding that self-reported use of a cane when filling out a social security form and

11

various hospital records reporting the use of a cane do not prove medical necessity of that cane); *Murphy v. Astrue*, No. 2:11-cv-00114, 2013 WL 829316, at \*9-11 (M.D. Tenn. Mar. 6, 2013) (Brown, M.J.) (holding that the use of an unprescribed cane to reduce pain did not demonstrate medical necessity), *report and recommendation adopted*, No. 2:11- v-00114, 2013 WL 4501416 (M.D. Tenn. Aug. 22, 2013) (Nixon, J.).

Where an ALJ ignores evidence that a claimant cannot ambulate effectively and focuses monocularly on evidence of a claimant walking without an assistive device, courts have held that the ALJ's decision was not based on substantial evidence. *Jackie M. v. Kijakazi*, Civil Action No. ADC-21-838, 2022 WL 2077997, at \*5-6 (D. Md. June 9, 2022) (remanding the case because the ALJ only addressed records showing that the claimant ambulated without an assistive device but ignored other records showing repeated use of an assistive device); *Shahriyar M. v. Kijakazi*, No. 1:20-CV-00425-CWD, 2021 U.S. Dist. LEXIS 232114, at \*21 (D. Idaho Dec. 1, 2021) (finding that there was overwhelming evidence in the record suggesting an inability to ambulate and the ALJ placed undue emphasis on a statement that the claimant made to providers claiming he could stand for twenty minutes and walk one kilometer without an assistive device); *Jesse T. v. Kijakazi*, No. 20-cv-50076, 2021 WL 5356750, at \*4 (N.D. Ill. Nov. 17, 2021) (remanding the case because the ALJ simply concluded that the claimant could ambulate

effectively because she still did household chores but ignored the medical evidence which showed she had severe knee pain); *Hulen v. Colvin*, No. 15-cv-035-LM, 2016 WL 527049, *5-8 (D. N.H. Feb. 9, 2016) (remanding because the ALJ's reasoning for discounting treatment notes stating that the claimant required an assistive device was unpersuasive).

### 3. Based on the requirements of Listing 1.02 and the case law regarding medical necessity of assistive devices, Plaintiff has not met her burden of proof at Step 3.

Here, the ALJ concluded that Plaintiff failed to establish that an assistive device, specifically a walker, is medically necessary. In reaching this conclusion, ALJ Burgtorf noted: (1) while Plaintiff received a Disability Parking Placard, she never received a prescription for a walker; (2) examples of Plaintiff "us[ing] a walker on an intermittent basis" such as an April 2018 event where Plaintiff went to the emergency room in distress; and, (3) the Consultative Examination Report, which noted that Plaintiff was able to walk with a guarded gait without the use of an assistive device. (ECF No. 11, PageID.77.) The lack of a prescription for an assistive device, while not dispositive in and of itself, considered together with the notes of a merely guarded gait without an assistive device, as found within the Consultative Examination Report, constitute substantial evidence in support of the ALJ's decision. Plaintiff has not met her burden to show that her assistive device is medically necessary.

### a.      The Disability Parking Placard

ALJ Burgtorf noted that while Plaintiff's treating physician indicated that Plaintiff "uses walker" in Plaintiff's Disability Parking Placard Application (ECF No. 11, PageID.408), the walker was not prescribed to Plaintiff by a doctor (ECF No. 11, PageID.77).  As an initial matter, a Disability Parking Placard cannot alone result in a finding of disability.  *See Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) ("[the plaintiff's treating physician's] ordering of a disability placard adds nothing to a finding of disability here because there is no evidence that the two have substantially similar requirements for finding a person to be disabled").  While Plaintiff is correct in that a prescription is not a necessary element to show medical necessity, *Krieger*, 2019 WL 1146356, at *4-5  it is still "an appropriate factor to consider" in making a disability decision, *id.*; *Swearengin*, 2018 WL 5045216, at *4 n.4.

Furthermore, the Disability Parking Placard Application's notation that Plaintiff "uses a walker" neither establishes the need for the walker nor describes the circumstances for which it is needed.  SSR 96-9p, 1996 SSR LEXIS 6 at *19.  Thus, it is analogous to the treatment notes in *Krieger* where the doctor noted that the plaintiff required a cane but did not specify the reasoning as required by SSR 96-9p, 1996 SSR LEXIS 6.  *Krieger*, 2019 WL 1146356, at *4-5.

**b.  The 2018 emergency room visit, and places in the record where an assistive device is mentioned or not mentioned**

ALJ Burgtorf cited a 2018 event where Plaintiff used a wheeled device going into her primary care physician's office in distress *from severe abdominal issues* and was then sent to the emergency room, but the emergency care providers did not observe her using a wheeled device.  (ECF No. 11, PageID.744.)  This interpretation is somewhat mischaracterized.  The Emergency Room treatment notes do not explicitly say if Plaintiff was using a walker or was not using a walker.  (*See* ECF No. 11, PageID.571-575.)  Given that Plaintiff was there for "abdominal pain and diarrhea" and started vomiting four days prior, the emergency care providers were likely not focused on Plaintiff's method of ambulation.  (*Id.*, PageID.571.)  ALJ Burgtorf's interpretation of this evidence is analogous to the ALJ's analysis in *Hulen*, where the ALJ interpreted a treatment note that plaintiff rode his bike to a doctor's appointment as the plaintiff was no longer using crutches to get around at that point.  *Hulen*, 2016 WL 527049, *5.  In both *Hulen* and here, the ALJ confused omission of a detail for nonexistence of a fact.  On the other hand, the fact that Plaintiff was "wheeled in on a walker screaming in distress" with abdominal issues is hardly indicative of *orthopedic* necessity.  (ECF No. 11, PageID.744-45.)  Thus, this evidence is not particularly helpful to Plaintiff either.

Next, the ALJ cites to various medical exhibits that do not show Plaintiff is unable to ambulate effectively.  (*E.g.* ECF No. 11, PageID.442-43, 518-19, 532, 572, 603, 672-73, 685, 694, 708, 745, 757-58, 770-71, 784, 796-97, 810, 836, 839, 841, 844.)  In response, Plaintiff cites exhibits, specifically medical records from her treating physician, showing that she uses a walker.  (*E.g.* ECF No. 11, PageID.440, 458, 670, 685, 752, 783, 792, 804, 839.)  The exhibits cited by the ALJ do not mention at all if Plaintiff uses a walker, so while they do not show that Plaintiff is *able* to ambulate effectively, they also do not show that Plaintiff is *unable* to ambulate effectively, and thus are unhelpful.  The medical records cited by Plaintiff are analogous to *Swearengin* in that in both that case and here, there are medical records showing the *use* of an assistive device but nothing that establishes the *necessity*.  *Swearengin*, 2018 WL 5045216, at *3-5.

### c.    The Consultative Examination Report.

Finally, that leaves the Consultative Examination Report, to which Plaintiff points (ECF No. 14, PageID.886), and the ALJ identified, as an example of Plaintiff ambulating without a walker, albeit with a "guarded gait" (ECF No. 11, PageID.545).  It is not immediately clear from the briefing what "guarded gait" means, but "guarded," as used in common English, is defined as "cautious" or "circumspect," *Guarded*, Webster's Ninth New Collegiate Dictionary (9th ed. 1989); and "guarding," in a medical context, refers to an action that a patient takes

16

to protect a body part that is in pain.  *Guarding*, Taber's Cyclopedic Medical

Dictionary, (21st ed. 2009) ("A body defense movement to prevent movement of

an injured part . . . .")[4]  Thus, "guarded" seems to fall well short of an "extreme

limitation" on the ability to walk.  20 C.F.R. Pt. 404, Subpt. P, App. 1, §

1.00(B)(2)(b)(1).

> The report also states that Plaintiff can walk on heels and toes with mild

difficulty but leaves blank explanatory questions about stability with "normal

limits" and "ataxic," and also fails to check any of the four options to explain

"how" the gait is compromised.  (ECF No. 11, PageID.545.)  The Consultative

Examination Report checks a box, without further explanation, indicating that

clinical evidence supports the need for a walking aid to "Reduce Pain" but not to

prevent falling over or for any other independent reason.  *Id.*  Later in the report,

the examiner writes that Plaintiff "walks with a guarded gait *without the use of an*

*assist device*."  (*Id.*, PageID.549; *see also Id.*, PageID.550 ("[Plaintiff] walks with

a guarded gait and her walker appears helpful for pain control.") (emphasis

added).)  Again, this provides substantial evidence of an ability to ambulate

---

 This would, perhaps, seem to be most consistent with an "antalgic gait," which "refers to an abnormal pattern of walking secondary to pain that ultimately causes a limp, whereby the stance phase is shortened relative to the swing phase." *See*, NIH National Library of Medicine, Nat. Ctr. for Biotechnology Information, https://www.ncbi.nlm.nih.gov/books/NBK559243/#:~:text=It%20refers%20to%20an%20abnormal,relative%20to%20the%20swing%20phase [last checked 8/9/22].

without the *need* for an assistive device, as opposed to being needed for effective ambulation.

This report is the closest the record gets to "describing the circumstances for which [an assistive device] is needed," SSR 96-9p, 1996 SSR LEXIS 6 at *19, *i.e.*, to reduce pain when walking certain distances; however, it demonstrates that Plaintiff falls short of "medical necessity" because it is analogous to *Carreon* and *Murphy*.

In *Carreon*, the plaintiff received authorization to use a cane from the Industrial Commission of Ohio. 51 F. App'x at 575. Plaintiff's doctor, however, stated that the cane was not "obligatory," but rather used for "insurance." *Id.* Thus, in both *Carreon* and here, record evidence showed that the assistive device was used for a purpose *less than medical necessity*.

In *Murphy*, the plaintiff used an unprescribed cane for the purpose of reducing pain. 2013 WL 829316, at *9-11. Here, similar to *Murphy*, the medical record shows that Plaintiff is using an unprescribed assistive device to reduce pain. In *Murphy*, the court found that the ALJ did not err in finding that the plaintiff did not require the use of the cane. *Id.* As the Commissioner effectively argues here, it is not an error for an ALJ to find an assistive device to not be medically necessary where it only is used to reduce pain.

18

### d.      Plaintiff has failed to meet her burden of proof at Step 3.

While the evidence cited by the ALJ does not conclusively state that

Plaintiff *can* ambulate effectively without a walker, it is not the Commissioner's

burden to so prove; rather, it is Plaintiff who bears the burden of proof at Step 3,

*King*, 742 F.2d at 974, and she has not demonstrated that her assistive device is

medically necessary or that she suffers from "an *extreme limitation* on the ability to

walk; *i.e.*, an impairment(s) that interferes very seriously with the [her] ability to

independently initiate, sustain, or complete activities."  20 C.F.R. Pt. 404, Subpt. P,

App. 1, § 1.00(B)(2)(b)(1) (emphasis added).  Thus, Plaintiff does not meet the

requirements of Listing 1.02A.  The ALJ's decision that Plaintiff did not meet her

burden of proof at Step 3 was based on substantial evidence because: (1) the record

only showed use of a walker rather than necessity of it; and, (2) the Consultative

Examination Report indicated that Plaintiff could walk without an assistive device,

although with a guarded gait—suggesting that Plaintiff did not have an extreme

limitation on her ability to walk.  Further, in light of this lack of support for the

medical necessity of an assistive device, the ALJ's above-described overstatement

as to the significance of the 2018 emergency room visit is harmless error, at best.

**F.**     **Conclusion**

For the reasons stated above, it is **RECOMMENDED** that the Court **DENY**

Plaintiff's motion for summary judgment (ECF No. 14), **GRANT** Defendant's

motion for summary judgment (ECF No. 16), and **AFFIRM** the Commissioner of

Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health &*

*Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," etc.  Any objection must precisely recite the provision of this Report and

Recommendation to which it pertains. Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated:  August 9, 2022                     _____

                                           Anthony P. Patti
                                           UNITED STATES MAGISTRATE JUDGE